**Date signed June 04, 2004**



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | | |
|---|---|---|---|
| In Re: | * | | |
| **Kora & Williams Corp. d.b.a. Cormac** | * | **Case No.** | **88-41402 PM** |
| **Construction Corp.,** | * | **Chapter** | **7** |
| | * | | |
| Debtor. | * | | |
| ************************************* | * | | |

### <u>MEMORANDUM OF DECISION</u>

Before the Court is the Chapter 7 Trustee's ("Trustee") objection [dkt. no. 398] to the

claim of the Insurance Company of North America ("INA") [P.O.C. No. 80] and INA's response

thereto [dkt. no. 415].[1]   The Trustee and INA filed cross motions for partial summary judgment

[dkt. nos. 467, 470, respectively].[2]

The Trustee objected to the allowance of a claim for, among other things, attorneys' fees

and expenses incurred by INA in the prosecution of an action against the District of Columbia

---

[1]  Creditor and equity interest holder Ira Steinberg ("Steinberg") also filed an objection to
INA's claim [dkt. no.404].

[2]  Oppositions were filed by the parties [dkt. nos. 476 (Trustee's opposition) and 480
(INA's opposition)].  Steinberg opposed INA's motion [dkt. no.417] and filed his own motion
for partial summary judgment against INA [dkt. no.468].

resulted in favor of the estate and INA.[3]  The issue presented for decision is the right of INA, an unsecured creditor, to receive reimbursement from the estate for its fees and expenses incurred in the prosecution of the litigation.

### Background

On March 20, 1984, Kora & Williams Corp. (the "Debtor") was awarded the contract to build the Union Station Bus/Parking Garage and Rail Access Facilities in the District of Columbia (the "Union Station Contract") at a fixed-price of $24,850,000.00.  INA was the Debtor's surety on this and other unrelated contracts.

On June 19, 1987, the District of Columbia terminated the Debtor as contractor for alleged default under the Union Station Contract.  The default termination was appealed to the Department of Administrative Services and then to the District of Columbia Contract Appeals Board ("DC CAB").  In January 1988, the parties hired the law firm of Watt, Tieder, Killian & Hoffar ("Watt Tieder"), now Watt, Tieder, Hoffar & Fitzgerald LLP, to prosecute the appeal from the default termination.

Pursuant to an Agreement of November 16, 1987 with the District of Columbia, INA made provisional payment under its performance bond whereby the surety tendered the sum of $12,869,460.00 and received a complete release of its obligation under the performance bond.  This tender was subject to a full reservation of rights by the surety.  Thus, if the termination was

---

[3]  The Trustee asserted that more than half of INA's claim constitutes attorneys' fees and other legal costs incurred by INA postpetition.  INA asserted that approximately $4,750,000.00 of its claim is for litigation costs in connection with the prosecution of the claim of the estate and of INA against the District of Columbia.

-2-

found to have been made for the convenience of the District of Columbia, as it eventually was, the surety was entitled to the return of the tendered sum with interest.

Debtor suffered severe financial setbacks because of the termination by the District of Columbia. A Chapter 7 involuntary petition was filed on May 16, 1988 [dkt. no. 1]. The Debtor consented to the entry of an order for relief on July 7, 1988 [dkt. no. 15] and moved to convert the Chapter 7 case to one under Chapter 11 on the same day [dkt. no. 16]. On July 18, 1988, the case was converted to a Chapter 11 case [dkt. no. 19] and by order entered January 6, 1989 converted back to a Chapter 7 case [dkt. no. 115]. William B. Sullivan ("Sullivan" or "Trustee") was appointed interim trustee [dkt. no. 116]. As a trustee was not elected, under 11 U.S.C. § 702(d), Sullivan became, and continues to serve as, the trustee.

The Trustee and INA entered into an Agreement dated August 9, 1989, to facilitate the prosecution of the Union Station claims. The Agreement was approved by this Court by order entered on September 11, 1989 [dkt. no. 217]. The Union Station litigation was bifurcated. The two parts of the litigation are known as entitlement (liability) and quantum (damages) segments. The issue of the liability of the District of Columbia was first to be determined. If that finding was in favor of INA and the Debtor, then the amount of damages was to be fixed. The positions of the Debtor and INA were identical as to the liability or entitlement element, but each sought damages based upon individual claims.

On May 12, 1993, Watt Tieder, the Trustee and INA entered into an Agreement (the "Tripartite Agreement") whereby the fees of Watt Tieder were capped, INA agreed to pay an additional $822,000.00 in fees plus all ongoing litigation expenses, and the Trustee agreed to pay

-3-

Watt Tieder a fee contingent on any recovery.  The Tripartite Agreement was approved by this Court by order entered August 11, 1993 [dkt. no. 333].

The DC CAB issued an interim entitlement opinion on May 7, 1994, reversing the default termination.  The quantum hearing took place before the DC CAB from November 29, 1994 to December 15, 1994.  On September 30, 1996, the DC CAB issued an opinion awarding INA and the Debtor the sum of $12,410,991.00 in damages plus interest at four percent per annum.  The District of Columbia sought review in the District of Columbia Court of Appeals.  On December 30, 1999, the District of Columbia Court of Appeals issued a ruling affirming the decision of the DC CAB that had held on eight independent grounds that the default termination was unlawful.  The default termination of the Debtor was converted to a termination for the convenience of the District of Columbia.  District of Columbia v. Kora & Williams Corp., 743 A.2d 682 (D.C. 1999).  The Court of Appeals did not alter the quantum award.  In July 2000, the District of Columbia paid the estate and INA the sum of $18,497,310.76.

There appears no material dispute of the underlying facts.  The parties agree that the resolution of this dispute can be governed entirely by review of the following documents:

A.   Agreement of Indemnity of May 1, 1981, by and among the Debtor, as principal, Steinberg and Cormac Construction Corporation, as indemnitors, and INA, as surety.

B.   Agreement of November 16, 1987, by and between INA and the Government of the District of Columbia whereby INA paid the District of Columbia the sum of $12,649,460.00 and the District of Columbia released INA from its obligations under the performance bond for the Union Station Contract.

C.   Agreement of August 9, 1989, by and between INA and Sullivan.

D.   Trustee's Motion for Order Approving Agreement with INA filed August 10, 1989 [dkt. no. 193].

-4-

E.      Order approving agreement of August 9, 1989, between the Trustee and INA entered September 11, 1989 [dkt. no. 217], by this Court.

F.      Tripartite Agreement by and between the Trustee, INA and Watt Tieder dated May 12, 1993.

G.      Agreement of December 7, 2001 by and between INA and Sullivan, approved by order of this Court entered December 21, 2001.

H.      INA Proof of Claim No. 22, filed November 12, 1988, while the case was under Chapter 11, and INA Proof of Claim No. 60, filed April 28, 1989, after the case was converted to a case under Chapter 7, both in the sum of $62,932,924.00.[4]

I.      INA Proof of Claim No. 80, filed December 20, 2001, in the sum of $10,763,826.64.

J.      Notice of Appeal entered in CAB No. D-839 filed before the DC CAB.

## Discussion

The Trustee's objections to Proof of Claim No. 80 is summed up in the headings to his argument contained in his Memorandum of Fact and Law in Support of Chapter 7 Trustee's Motion for Partial Summary Judgment on Objection to INA's Amended Proof of Claim:

A.  As a matter of bankruptcy law, INA's unsecured claim should be disallowed insofar as it seeks reimbursement of legal fees and expenses incurred by INA post-petition.

B.  As a matter of contract law, INA's claim should be disallowed insofar as it seeks reimbursement of legal fees and expenses incurred by INA in prosecuting the Union Station appeal because such fees and expenses are not covered by the Agreement of Indemnity.

The Trustee's statement of these two propositions of law is absolutely correct.  The majority of published opinions supports the proposition contained in Judge Keir's decision, In re

---

[4]  By order entered April 10, 2003 [dkt. no. 378], this Court disallowed Proof of Claim No. 22 in its entirety and disallowed Proof of Claim No. 60.  Proof of Claim No. 60 survived only insofar as it and its exhibits are incorporated by reference into Claim No. 80.

-5-

Smith, 206 B.R. 113, 115 (BC MD 1997), that attorney's fees for representation of an unsecured

creditor incurred subsequent to the filing of a bankruptcy case are not allowable as a part of its

claim.  A number of these cases are cited in the case of Pride Companies, L.P. v. Johnson (In re

Pride Companies, L.P.), 285 B.R. 366, 372 (BC ND TX 2002). An often cited statement of this

bankruptcy hornbook rule appears in the case of  Sakowitz, Inc. v. Chase Bank Int'l (In re

Sakowitz, Inc.), 110 B.R. 268, 272 (BC SD TX 1989):

> Subsection 506(a) of the Bankruptcy Code expressly provides for both a secured
> *and* an unsecured portion of a secured indebtedness where the value of the
> collateral is less than the debt. In the following subsection, [506(b)], Congress
> provided for attorney fees *only* for the secured portion of such a claim. Congress
> must be presumed to have understood what it was doing. It could easily have
> provided for attorney fees for the unsecured portion of the claim as well as the
> secured portion. That it did not do so this Court feels is determinative of the issue
> before this Court under the maxim of *expressio unius est exclusio alterius.* This is
> a maxim of statutory interpretation meaning that the expression of one thing is the
> exclusion of another. When coupled with the provisions of §§ 502(b), which
> provides for the determination of a claim *as of the date of the filing of the petition,*
> it is clear that the statutory scheme provided for by the Congress in the
> Bankruptcy Code excludes attorney fees earned post-petition on unsecured proofs
> of claim or on the unsecured portion of a secured claim notwithstanding any
> contractual (or statutory) provision which would allow such fees outside of bankruptcy.

This proposition was restated by Chief Judge Babcock in the case of The Bronze Group, Ltd. v.

Sender (In re Hedged-Investments Assoc., Inc.), 293 B.R. 523, 526 (D. Col. 2003):

> Moreover, the Supreme Court ruled that §§ 506(b) applies only to oversecured
> claims:
>
>> The relevant phrase in §§ 506(b) is: "[T]here shall be allowed to
>> the holder of such claim, interest on such claim, and any
>> reasonable fees, costs, or charges provided for under the agreement
>> under which such claim arose." *"Such claim" refers to an
>> oversecured claim.* The natural reading of the phrase entitles the
>> holder of an oversecured claim to postpetition interest and, in
>> addition, gives one having a secured claim created pursuant to an
>> agreement the right to reasonable fees, costs, and charges provided
>> for in that agreement. Recovery of postpetition interest is
>> unqualified. Recovery of fees, costs, and charges, however, is

-6-

> allowed only if they are reasonable and provided for in the
> agreement under which the claim arose.

U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103
L.Ed.2d 290 (1989) (emphasis added).

> This rule is based on long-standing bankruptcy tenets. Congress could have
> provided for the recovery of post-petition fees and costs by unsecured and
> undersecured creditors such as Appellant. However, it did not. This demonstrates
> Congressional intent to disallow the recovery of post-petition fees and costs by
> creditors whose claims are not oversecured. See, *e.g.*, Saunders, 130 B.R. at 210
> ("If Congress had intended for the holders of both secured claims and unsecured
> claims to recover attorneys' fees, it could have easily said so."); Sakowitz, 110
> B.R. at 272 (applying the doctrine of espresso unius est exclusio alterius (a
> maxim of statutory interpretation meaning that the expression of one thing is the
> exclusion of another) to reach the same conclusion); Woodmere, 178 B.R. at 356
> ("If no 'security cushion' exists to allow for post-petition interest, none exists for
> the allowance of attorney fees and costs.").

Allowance of attorney's fees and costs is limited to oversecured creditors.  See also 4 ALAN N.

RESNICK ET AL., COLLIER ON BANKRUPTCY ¶ 506.04[3] (15th ed. revised 2004).

The Trustee is likewise correct in his argument regarding the plain language of the

Agreement of Indemnity.  INA must sustain or incur expenses that satisfy one of the three

requirements contained in the printed agreement that it drafted.  It fails as to all three.  Its

recitation of the Debtor's obligations under the Agreement of Indemnity purposefully omits

these requirements.  This effort fails.

The first provision requires exoneration to INA "[b]y reason of having executed or

procured the execution of the Bonds[.]"  If INA is correct in its oral argument that this provides

for the payment of its attorney's fees in this situation, then the remaining two provisions of the

indemnity are mere surplusage.  Under INA's argument, any expense incurred by virtue of its

execution of the bond subjects the indemnitors to pay its fees and costs.  However, it is

uncontradicted that the liability under this dubious provision occurred prior to the filing of the petition and the cancellation of the bond. The expenses that are the subject of Proof of Claim No. 80 were incurred afterward. Any expenses incurred in enforcing the Agreement of Indemnity were incurred prior to the filing of the petition. The expenses incurred in connection with the District of Columbia litigation were not to enforce the bond, but rather to recover the money paid by INA on account of the performance bond. This fact wipes out any claim under the third basis for indemnity that provides for exoneration of INA for expenses incurred "[i]n enforcing any of the covenants and conditions of this Agreement."

The second provision requires exoneration to INA "[b]y reason of the failure of the Principal or Indemnitors to perform or comply with the covenants and conditions of this Agreement." Here again, the Debtor had fully complied with the specific covenants of the Agreement, other than the financial obligations accruing prior to the filing of the petition.

But, examination of the Agreement of Indemnity does not end this exercise. The Court must also consider the effect of the Agreement of August 9, 1989, that was approved by this Court by an order entered on September 11, 1989. In particular, the Court must examine sections 2 and 4 of that Agreement that provide:

2. UNION STATION

      (a) The Trustee recognizes and agrees that, by contract and by operation of law, INA has an ownership interest in any and all funds recovered from the D.C. Government as a result of a judgment or settlement of the Union Station Claims, up to and including the aggregate amount of all Bond Payments made by INA in connection with the Union Station Project, the aggregate amount of all reasonable fees, costs and expenses incurred by INA in connection with the preparation and prosecution of the Union Station Claims, and/or the Union Station Project generally, and interest thereon. The Trustee also recognizes and agrees that after INA has recovered the amount of its Bond Payments, fees, costs,

expenses and interest incurred in connection with the Union Station Project, INA may have an additional interest, as creditor or subrogee, in any and all funds recovered by the Trustee from the D.C. Government as a result of a judgment or settlement of the Union Station Claims. The Trustee also recognizes and agrees that INA has spent considerable sums of money in preparation of the Union Station Claims and that Watt, Tieder has developed or possesses extensive first hand knowledge of the facts and law applicable to the Union Station Claims.

(b) INA recognizes and agrees that Watt, Tieder does not represent the Trustee, that INA and the Trustee have separate, but related, claims against the D.C. Government relating to the Union Station Project, and that the Trustee has engaged Arent, Fox, Kinter, Plotkin & Kahn ("Arent, Fox") to represent him in, inter alia, the Union Station Claims.

(c) In view of the foregoing, INA and the Trustee agree to cooperate in the prosecution of the Union Station Claims as set forth hereinbelow.

(d) Watt, Tieder shall be primarily litigation counsel directly responsible for the prosecution of the entitlement element of the Union Station Claims. INA will continue to pay Watt, Tieder's fees and expenses directly. INA reserves the right, at any time and at its sole and exclusive option, to terminate the engagement of Watt, Tieder, and/or to cease direct compensation of Watt, Tieder. In the event that INA at any time terminates the engagement of Watt, Tieder and/or ceases its direct compensation of Watt, Tieder, and/or settles its Union Station Claims, INA agrees to furnish the Trustee with a limited written waiver of any and all conflicts of interest, attorney-client and/or other privileges as may be necessary to allow the Trustee, at his option, to engage Watt, Tieder to continue prosecution of the Union Station Claims. In the event the Trustee decides to engage Watt, Tieder to provide services on behalf of the bankruptcy estate, appropriate application shall be made by the Trustee for Bankruptcy Court approval of the retention of Watt, Teider, and Watt, Teider shall be compensated by the bankruptcy estate pursuant to appropriate fee application and award by the Bankruptcy Court. INA specifically reserves the customary right to object to any application by the Trustee to employ and/or compensate Watt, Tieder.

(e) Arent, Fox shall have a secondary role and shall be responsible for advising the Trustee in the entitlement phase of the Union Station Claims, and shall act as liaison with Watt, Tieder in order to assure that the Trustee understands the steps being taken by INA and Watt, Tieder, and that the interests of the bankruptcy estate are being properly served and protected. In order to minimize expense to the bankruptcy estate, the Trustee agrees to make every

-9-

reasonable effort to limit the activities of its counsel to avoid unnecessary duplication of the activities of Watt, Tieder.  It is understood and agreed that some effort will have to be expended by the Trustee's counsel in becoming familiar with what has transpired thus far in the preparation and prosecution of the Union Station Claims.  INA specifically reserves the customary rights to object to any applications to compensate Trustee's counsel, and the Trustee specifically reserves the customary rights to object to any claims of INA for reimbursement of its legal fees and expenses.

      (f) In the event the entitlement portion of the Union Station Claims is successfully adjudicated or settled, the Trustee shall have the option, through his own counsel and at the expense of the bankruptcy estates, to prepare, present and/or negotiate the termination for convenience cost proposal, or the quantum phase of the litigation.  In the event that the D.C. Government objects to the termination for convenience cost proposal submitted during the quantum phase of the litigation, the Trustee, upon written request by INA shall apply to the Bankruptcy Court for approval to employ Watt, Tieder as primary counsel for the rebuttal to the D.C. Government's objections.  If so employed, Watt, Tieder shall be compensated by the bankruptcy estate pursuant to appropriate fee application and award by the Bankruptcy Court.  INA specifically reserved the customary rights to object to any application to compensate Watt, Teider.

      (g) To effectuate their respective roles, INA and the Trustee agree that they and their counsel shall cooperate with one another to the fullest extent in the prosecution of the Union Station Claims.  Specifically, INA shall make Watt, Tieder, its consultants, and INA's representatives and attorneys available on a regular basis, to be agreed upon, to discuss the status of and progress in the Union Station Claims.  The Trustee shall, upon reasonable notice, have reasonable access to all documents which he turns over to Watt, Tieder, as well as to all other documents related to the Union Station claims in the possession, now or hereafter, of Watt, Tieder and/or its consultants.  To the extent that documents which are estate property are in the possession, now or hereafter, of Watt, Tieder and/or its consultants, INA expressly assumes responsibility for the maintenance, security and integrity of such documents.

      (h) The Trustee and INA agree to meet or confer by telephone, at least once a month, to promote continuing cooperation in the preparation and prosecution of the Union Station Claims, to discuss and decide matters of joint strategy, to resolve any problems or questions concerning the respective roles of their counsel, and to deal with other issues of mutual interest, whether or not specifically addressed by this Agreement. The Trustee and INA agree to use their best efforts to reach consensus on how to prosecute the Union Station Claims, but in the event of a fundamental disagreement, the

-10-

Trustee shall be free to exercise his independent judgment and do what he determines is in the best interest of the bankruptcy estate subject to any right that INA might have to object to the Bankruptcy Court.

(i) INA agrees to substantiate to the reasonable satisfaction of the Trustee the amount of loss, cost and expense paid or incurred by INA in connection with the Union Station Project.

(j) INA, the Trustee, and Watt, Tieder agree that they shall share attorney-client communications, attorney work product, trial preparation materials, and other privileged documents and communications relating to the Union Station Claims and do so with the understanding that the privilege will not be waived because of the parties' common interests in litigating against the D.C. Government, [citations omitted].

4. <u>RESERVATION OF RIGHTS BY THE TRUSTEE</u>

Notwithstanding anything to the contrary contained in this Agreement, any and all representations by the Trustee relating to INA's ownership interests in Contract Balances in connection with any project are based solely on facts currently known to the Trustee. The Trustee specifically reserves the right to alter his current position with respect to INA's interests based upon facts or circumstances which arise or are made known to the Trustee in the future. The Trustee specifically reserves the right to contest the good faith of the Bond Payments, losses, costs, fees, and expenses incurred or paid by INA on the Four Bonded Projects and the Union Station Project. The Trustee specifically reserves the right to contest any settlement by INA of its claims against third parties which results in INA's recovering less than the full amount of its claims, and in the event of any such settlement, to contest any deficiency claim by INA against money or assets recovered by the Trustee. The bankruptcy estate may have claims against parties other than the Obligees on the Four Bonded Jobs and the D.C. Government on the Union Station Project; the Trustee specifically reserves all rights, with or without approval or participation by INA or its counsel, to investigate, assert, and prosecute said claims on behalf of the estate.

The Court must also consider the effect of the Tripartite Agreement among the Trustee,

INA and Watt Tieder dated May 12, 1993. Under this Tripartite Agreement, INA capped its

future payments to Watt Tieder at $617,000.00, approximately $285,000.00 of which was for

services already rendered.[5]  INA agreed to be responsible for all future litigation expenses other than legal fees.  The Tripartite Agreement states at page 3 that "[t]he Trustee believes generally that it is fair and appropriate for other creditors to share the litigation burden with INA since successful prosecution of the D.C. Cab Case will benefit all creditors with allowed claims . . . ." To that end, the Tripartite Agreement provided at paragraph 4(b):

> In addition to the amounts payable to WT&H described hereinabove, and in further consideration of WT&H's agreement to prosecute fully the Trustee's Quantum claim and to cap and limit its ability to recover legal fees as described hereinabove, the parties hereto agree that WT&H shall receive a contingent fee recovery of twenty-five percent (25%) of that portion of the Trustee's recovery from the D.C. Government in the D.C. Cab Case, whether by judgment or settlement, which is for the benefit of creditors other than INA ("WT&H's Contingent Recovery"). . . .

Paragraph 4(a) provides:

> INA agrees that it has no claim to any sum recovered by the Trustee from the D.C. Government, whether by judgment or settlement, in connection with the Trustee's Quantum claim in the D.C. Cab Case, except as an unsecured creditors in Kora & Williams Corporation's bankruptcy case.  The Trustee agrees that he has no claim to any sum recovered by INA from the D.C. Government whether by judgment or settlement, in connection with INA's Quantum claim in the D.C. Cab Case (hereinafter "INA's Contract Recovery") and said sum is not property of the estate in this bankruptcy case.  WT&H shall use its best efforts to have the Board specify and identify with particularity all of the elements of any award in the D.C. CAB Case so as to facilitate identifying those sums which comprise or form a part of the Trustee's Quantum claim and INA's Contract Recovery. INA reserves the customary rights to object to any applications for payment of administrative fees and/or expenses, and/or to any application(s) by the Trustee or others for commissions.

---

[5] The Court does not understand fully the components of this $617,000.00 payment described in pages 3-6 of the agreement.

Thus, the Trustee gave up 25% of the estate's potential recovery so that Watt Tieder would continue the litigation that went to the mutual benefit of INA and the estate. The parties recognized that neither would have any right to the amounts recovered by the other. Each party retained separate counsel for the quantum phase. The parties entered into another Agreement on December 7, 2001. Paragraphs 4 and 5 of that Agreement provide:

> 4. INA's current proof of claim in K&W's bankruptcy case includes contingent claims and seeks a total of $62,932,924 exclusive of interest and costs of an unstated amount and nature. On or before December 31, 2001, INA shall file and serve on the Trustee an amended proof of claim in K&W's bankruptcy case limited to its non-contingent, fully liquidated general unsecured claim and limited in total amount to $10,763,826.64 (subject only to adjustment by INA for any mathematical error later discovered in computing the amount) and any interest on the claim pursuant to Section 726(a)(5) of the Bankruptcy Code. INA's amended proof of claim shall be limited to the claims outlined in Patrick Pike's November 27, 2001 letter to the Trustee, including what INA contends are its total costs and expenses (less credits) incurred in connection with the following construction projects: Union Station, Pentagon, USDA Agricultural Research Center, Walker House, Andrews Air Force Base, and Landover Bus Garage (the "Projects"), to be allowed or disallowed by the bankruptcy court in accordance with bankruptcy law and procedure.

> 5. INA's amended proof of claim shall not include its Union Station performance bond costs and expenses for which it has already been paid directly by the District. INA's amended proof of claim shall not include INA's Costs or any interest thereon assuming the Trustee pays INA's Ownership Claim in accordance with this Agreement.

The last sentence of paragraph 10 states: "The Trustee and INA reserve all rights with respect to INA's overlapping claims against the District and K&W."

The Court finds from all this discussion that on two occasions agreements were approved by this Court on the Trustee's motions providing for the payment of the litigation expenses that are the subject of this claim. At the same time, the Court finds that this claim does not fit into

-13-

any of the categories that allow payment of an administrative expense. Were this case to have remained a case under Chapter 11, INA would have most assuredly been entitled to recover its expenses under 11 U.S.C. § 503(b)(3)(D) as a creditor making a substantial contribution to the case. And while this Court often hears that it is a Court of equity and should apply equitable principles under 11 U.S.C. § 105(a), that section is limited to procedures. The Bankruptcy Court is not free to alter the Bankruptcy Code in hard cases such as this. See In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820 (CA1 1990); F.D.I.C. v. Colonial Realty Co., 966 F.2d 57 (CA2 1992); Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 111 (CA5 1995); Graves v. Myrvang (In re Myrvang), 232 F.3d 1116 (CA9 2000); David G. Epstein & Steve H. Nickles, Another Way of Thinking About Section 105(a) and Other Sources of Supplemental Law Under the Bankruptcy Code, 3 CHAP.L.REV. 7 (2000).

The Court likewise finds that INA may not recover on the basis of detrimental reliance. It prosecuted the claim and recovered more than $27,000,000.00 on account of its action. There is a pending lawsuit where INA seeks $17,000,000.00 more is sought from the District of Columbia. It cannot be said with a straight face that INA would not have proceeded but for the action of the Trustee. Counsel for the Trustee shall submit an appropriate order on notice.

cc:    Jeffrey L. Tarkenton
       Andrea K. Short
       Womble, Carlyle *et al.*
       1401 Eye St., N.W., Seventh Floor
       Washington, D.C. 20005

       Nelson C. Cohen
       Zuckerman Spaeder LLP
       1201 Connecticut Ave., N.W.
       Washington, D.C. 20036

-14-

William B. Sullivan
P.O. Drawer 84
Winston-Salem, NC 27104

Craig Palik
McNamee, Hosea *et al.*
6411 Ivy Lane, Ste. 200
Greenbelt, MD 20770

Gina M. Petro
Danielle M. Varnell
David C. Romm
Winston & Strawn LLP
1400 L Street, N.W.
Washington, D.C. 20005

**End of Memorandum Decision**