**Date signed November 14, 2004**



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| KORA & WILLIAMS CORP. | : | Case No. 88-41402PM |
| d/b/a CORMAC CONSTRUCTION CORP. | : | Chapter 7 |
| | : | |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**

The law firm of Watt, Tieder, Hoffar & Fitzgerald, LLP, Successor in Interest to Watt, Tieder & Hoffar (hereinafter "Watt Tieder"), special counsel to the Chapter 7 Trustee, filed a First and Final Application for Compensation on February 2, 2004 ("Application"). It seeks to be allowed $3,869,856.25 or $2,932,356.25, for which it offers alternative theories for compensation. Because of the benefit to the estate rendered by its services, it urges that it is entitled to a success fee apart from the Fee Agreement approved by the court. The Chapter 7 Trustee, William B. Sullivan, Riggs Bank, N.A., a creditor, and Ira Steinberg, the owner of all of the stock of the Debtor, object to this aspect of the Application, urging that compensation should be limited to the terms of the Fee Agreement between Watt Tieder and the Trustee approved by the court by an Order entered August 11, 1993.[1]

The essence of what Watt Tieder seeks to do by this Application is to modify the tripartite Fee Agreement among the Trustee, the surety and itself. While everyone agrees that the recovery obtained as a result of the efforts of Watt Tieder exceeded everyone's expectations, it cannot be

---

[1] Because this is a solvent estate, the Chapter 7 Debtor has standing to object to a fee application. *Willemain v. Kivitz*, 764 F.2d 1019, 1022-23 (CA4 1985).

said that it could not be anticipated either that Watt Tieder would hit a home run so that those creditors would be paid in full or that it would strike out. But no one thought that when the dust of litigation settled, the holders of all allowed unsecured claims would be paid in full with interest and several million dollars would pass through to the Debtor's stockholder. Because of the tremendous range of results possible in this litigation, the parties entered into a contingent fee agreement.

Most reported decisions on the issue presented of revising contingent fees approved by the court involve unsuccessful attempts to reduce a contingent fee agreement such as *In re Merry-Go-Round, Inc.*. 244 B.R. 327 (BC Md. 2000); *In re Reimers*, 972 F.2d 1127 (CA9 1992); *In re Yablon*, 136 B.R. 88 (BC S.D.N.Y. 1992). As noted in the case of *In re Barron*, 225 F.3d 583, 586 (CA5 2000), the question of anticipated developments not contemplated in fee agreements relates to the time when the agreement was made.

The parties have entered into a stipulation of certain facts as follows:

## PROPOSED STIPULATED FACTS[1]

1. When the parties negotiated the 5/12/93 contingent fee agreement, the parties did not contemplate a surplus case.

2. Net cash recovery to estate was $14,179,425

3. Cash recovered by INA was $27,062,629

4. Pending INA claim vs. D.C. $17,372,716

5. Trustee had cash assets on hand as of 7/00 of $   752,847

6. Trustee had cash assets on hand as of 8/04 of $16,700,000

7. INA's pending claim prior to receipt of proceeds of DC CAB case was $62,932,924

8. INA's amended claim after receipt of proceeds of DC CAB case was $10,763,826

9. Arent Fox final fee awarded $   725,000

10. Womble Carlyle 2nd Fee Application seeks $   690,000

11. The total amount of all allowed unsecured claims
without regard to INA's claim is approximately   $ 2,763,000

_____

[1] Numbers used are intended as only approximations.

The Fee Agreement before the court, by and among Watt Tieder, William B. Sullivan as Trustee of the Chapter 7 bankruptcy estate of Kora & Williams Corporation, and the Insurance Company of North America ("INA") was entered into during the course of litigation that was memorialized in the reported case of *District of Columbia v. Kora & Williams Corp.*, 743 A.2d 682 (D.C. 1999).  Initially, that litigation was funded entirely by INA, the surety of Kora & Williams for the Union Station job.  Early in 1993, INA decided that it wished to put a cap on its exposure for future litigation expenses.  Prior to that date, INA had paid Watt Tieder for its bills as rendered.  The court understands that INA paid $3,854,685 in fees pursuant to the work done prior to the Fee Agreement and for additional sums paid under the Fee Agreement.

The Fee Agreement provides in paragraph 4.(b):

> (b)  In addition to the amounts payable to WT&H described hereinabove, and in further consideration of WT&H's agreement to prosecute fully the Trustee's Quantum claim and to cap and limit its ability to recover legal fees as described hereinabove, the parties hereto agree that WT&H shall receive a contingent fee recovery of twenty-five percent (25%) of that portion of the Trustee's recovery from the D.C. Government in the D.C. Cab Case, whether by judgment or settlement, which is for the benefit of creditors other than INA ("WT&H's Contingent Recovery").  The following example illustrates how WT&H's Contingent Recovery is to be calculated and paid pursuant to the Trustee's Final Report and Proposed Distribution:

| | | |
|---|---:|---:|
| Trustee's Total Recovery from D.C. Cab Case | $ 9,000,000.00 | [14,179,425] |
| Total Funds Available for Distribution From Other Sources | + 1,000,000.00 | [ 2,729,235] |
| Total Funds Available for Distribution | 10,000,000.00 | [16,908,660] |
| Total Allowed Unpaid Priority Claims | - 1,000,000.00 | [ 61,461] |
| Balance Available for Allowed Unsecured Claims | 9,000.000.00 | [13,993,639] |
| INA's Total Allowed Unsecured Claims | 7,000,000.00 | **[ 4,000,000] |
| Other Creditors' Total Allowed Unsecured Claims | 3,000,000.00 | [ 2,762,941] |
| Portion of Recovery Benefitting Other Creditors | | |
| (30% x 9,000,000) | 2,700,000.00 | -- |
| WT&H's Contingent Recovery | | |
| (25% x 2,700,000) | $   675,000.00 | [   690,735] |

The numbers in brackets to the right of the figures in the Agreement are taken from the Trustee's calculations in Exhibit 4. With the exception of the number marked with an asterisk, these numbers represent the results of the litigation and other firm figures. The number marked with an asterisk is based upon the Trustee's estimates, as fully explained in his footnotes to Exhibit 4.

Because of the inability of the court to fix the calculation with precision prior to the resolution of the INA claim, the parties seek a ruling in the nature of a declaratory judgment with respect to the issues raised by Watt Tieder in its Application.

The court finds that paragraph 4(b) of the Fee Agreement is both unambiguous and controlling. What Watt Tieder urges here is the converse of the argument raised in the case of *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327, 338-39 (BC Md. 2000). In *Merry-Go-Round*, on the Trustee's motion, pursuant to 11 U.S.C. § 328(a), Judge Derby approved a contingent fee agreement between the estate and a law firm. After the court approved settlement of that litigation on terms most favorable to the estate, the Chapter 7 Trustee took issue with the magnitude of the fee to be paid to the law firm under that agreement. In approving a fee of $71.2 million to the law firm in a case that was settled for $185 million, Judge Derby stated:

> Under Maryland law, ". . . the question of the reasonableness of a contingent fee agreement, . . . must be revisited after the fee is quantified or quantifiable and tested by the factors enumerated in Rule 1.5(a)." *Attorney Grievance Commission v. Pennington*, 355 Md. 61, 74, 733 A.2d 1029, 1036 (1999). If a lawyer's fee that appeared reasonable at the outset becomes excessive, the attorney should reduce the fee. *See Attorney Grievance Commission v. Korotki*, 318 Md. 646, 664-65, 569 A.2d 1224, 1233 (1990). The determination of reasonableness for the court, therefore, is guided by the express eight factor test in Rule 1.5(a).[2]

242 B.R. at 339. In language equally applicable to the circumstances of this case, Judge Derby opined:

> A related, additional, and important consideration is that Snyder, Weiner's contingency fee agreement was negotiated by sophisticated, experienced parties on both sides and was approved in advance by the court. This was not a contingency fee agreement where the attorney possessed undue leverage because of superior knowledge and sophistication.

---

[2] *Korotki* was a disciplinary action where the Court of Appeals suspended an attorney from the practice of law for charging a 75% contingency fee after obtaining two increases in the amount of the original contingent fee agreement. The Court of Appeals noted that "it is generally a violation of the rule [former Maryland Disciplinary Rule 206(A) dealing with excessive fees] for the attorney's stake in the result to exceed the client's stake." 569 A.2d at 1233.

242 B.R. at 340.

This court will apply the same reasoning to arguments for reducing or increasing contingent fees.

Watt Tieder puts great emphasis on the following language interpreting § 328(a) of the Bankruptcy Code found in the case of *In re Omegas Group, Inc.*, 195 B.R. 875, 880 (BC W.D. Ky. 1996):

> Accordingly, the bankruptcy court is expressly empowered to "totally disregard an employment agreement where necessary and award compensation more appropriate under the individual circumstances of the case." *In re Financial News Network, Inc.*, 134 B.R. 732, 735 (Bankr. S.D.N.Y. 1991); *In re Land*, 138 B.R. 66, 71 (Bankr.D.Neb.), *aff'd*, 994 F.2d 843 (8th Cir. 1992). Moreover, "the court's power includes the power to increase as well as decrease the agreed-upon compensation" *In re Land*, 138 B.R. at 71.
>
> An increase in compensation is appropriate where the parties did not foresee "the time, the pressures, or the complexity of [the] case or the phenomenal results achieved." *In re Warrior Drilling & Eng'g Co.*, 9 B.R. 841, 847 (Bankr. N.D. Ala.), *modified on other grounds*, 18 B.R. 684 (Bankr. D.C. Ala. 1981); *In re Malcon Developers, Inc.*, 138 B.R. 677 (Bankr. N.D.N.Y. 1992). In fact, the *In re Warrior* case held that such factors were sufficient to make an original agreement, which was entered into for maximum compensation at an hourly rate, "'improvident,' within the meaning of § 328(a)." 9 B.R. at 847; *See also Malcon Developers*, 138 B.R. at 680-81.

Taken in the abstract, these words would support the proposition that the court may disregard totally an employment agreement between an attorney and a bankruptcy trustee where phenomenal results are achieved, as here. But the facts of *Omegas* do not lend unqualified support to Watt Tieder's case. In *Omegas*, the compensation of the special counsel hired was fixed by three different methods as to different categories of work, including a one-third contingency fee for recoveries from preference and fraudulent conveyance recoveries. The cause of action that produced a $1 million recovery was based on several theories as filed. Initially, as both the Chapter 7 Trustee and the bankruptcy attorney testified, they believed that the cause of action was a preferential or fraudulent conveyance claim. It was only after a series of depositions exposing critical evidence that the theory of the case was said to shift dramatically. New grounds were created to support a contract theory as distinguished from a preference or fraudulent conveyance theory that provided the foundation for the contingent fee claim. Settlement followed. The court disagrees with Watt Tieder that this case lends support to its claim for

enhanced fees based upon success beyond that provided in the agreement. The court finds that Watt Tieder should be held to the terms of its contingent Fee Agreement with the Trustee insofar as the firm is to be compensated by the bankruptcy estate. The court does not agree with the allegation that, as a result of Watt Tieder's efforts, Ira Steinberg will receive a "windfall." When it ultimately was decided that Kora & Williams was removed unlawfully from the Union Station job, what Mr. Steinberg got was justice, not an unexpected turn of good luck.

The court finds no basis in law to augment the contingent fee paid by the bankruptcy estate. The contingent recovery outlined by the Trustee is remarkably similar to the illustration contained in the Fee Agreement. The Trustee agreed to a 25% contingency against that portion of the recovery by the estate distributable to general unsecured creditors after deducting for administrative expenses and the portion due the surety.

Once again, nothing in this opinion should be taken to denigrate the outstanding work done by Watt Tieder, for which it was compensated amply. Its recovery was far beyond expectations of the parties to the Agreement. Nonetheless, it is bound by the Agreement. Like the Trustee in the *Merry-Go-Round* case, it will abide by the Agreement that it made. The court leaves open the issue as to whether or not Watt Tieder is entitled to compensation above and beyond that ordered to be paid by the Trustee for the work done on the Union Station job. Faced with such a claim, the owner of the equity in the Debtor may raise all appropriate defenses to such an effort. However, the issue of compensation to Watt Tieder from a source other than what is to be paid by the Trustee out of the bankruptcy estate is a matter to be considered independently of the issue presented by this Application for Compensation from the estate.[3] Finally, for the reasons expressed in the case of *In re Reed*, 312 B.R. 832, 834-37 (N.D. Tex. 2004), this court will not award interest on the fees allowed Watt Tieder either from the date of filing this Fee Application, February 2, 2004, or from the date of the completion of its services.

An appropriate order will be entered.

---

[3] Should Watt Tieder seek such relief, the issues presented are of a nature that appear to this court to be tailor-made for the mediation process. Watt Tieder will be paid fully what is due under the tripartite agreement. Ira Steinberg, through his ownership of the Debtor, will receive a massive benefit from Watt Tieder's efforts, and as a matter *ex aequo et bono*, is he obligated to pay Watt Tieder on account thereof?

cc:
William B. Sullivan, Trustee, Womble Carlyle, P.O. Drawer 84, Winston-Salem, NC 27102
Jeffrey Tarkenton, Esq., Womble Carlyle, 1401 I Street, N.W., Washington, DC 20005
Robert G. Watt, Esq., Watt Tieder, 7929 Westpark Drive, Suite 400, McLean, VA 22102
Morton Faller, Esq., Shulman Rogers, 11921 Rockville Pike, Rockville, MD 20852
Daniel Litt, Esq., Dickstein Shapiro, 2101 L Street, N.W., Washington, DC 20037
David C. Romm, Esq., Winston & Strawn, 1400 L Street, N.W., Washington, DC 20005
Craig M. Palik, Esq., Greenan & Walker, 6411 Ivy Lane, Suite 200, Greenbelt, MD 20770

**End of Memorandum**