IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **IRA STEINBERG et al.**, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Civil Case No. **05-2890 RWT** |
| | * | |
| **WATT, TIEDER, HOFFAR, &** | * | |
| **FITZGERALD, LLP**, | * | |
| | * | |
| Appellees; | * | |
| | * | |
| | **** | |
| *In re* **KORA & WILLIAMS CORP.**, | * | Appeal from Bankruptcy Case No. 88-41402 |
| | * | |
| Debtor. | * | |
| | ******** | |

**MEMORANDUM OPINION**

I

This appeal is another installment in the ongoing dispute in the U.S. Bankruptcy Court for the District of Maryland regarding the bankruptcy of Kora & Williams Corporation ("K & W"). *See* No. 88-41402 (Bankr. D. Md.). As this Court explained in more detail in *Insurance Co. of North America v. Sullivan*, 333 B.R. 55 (D. Md. 2005) (No. 04-2805), K & W was a contractor that was commissioned to do renovation and construction work at Union Station in Washington, D.C. In 1987, the District of Columbia terminated K & W's contract, allegedly for default; K & W went bankrupt as a result; and years of litigation began that continue to this day. Eventually, in 1996, the D.C. Contract Appeals Board ("DC CAB") held that the termination was unlawful and would therefore be treated as a termination at D.C.'s convenience rather than for default, and K & W's estate was awarded over $12 million, plus interest. This sequence of events gave rise to an unusual circumstance: a bankruptcy estate with more cash than debt. As frequently happens when a pot of

money becomes available, the parties to this litigation have been arguing over how the pot is to be divided.

The instant dispute concerns the contingency fees to which Watt, Tieder, Hoffar & Fitzgerald, the attorney on behalf of K & W's surety (the Insurance Company of North America, "INA") and the other creditors in the DC CAB litigation, is entitled. In 1993, while the DC CAB litigation was ongoing, Watt Tieder, INA, and the bankruptcy trustee for K & W entered into an agreement, the "Tripartite Agreement," that (among other things) controls Watt Tieder's fees. The agreement gave Watt Tieder the right to 25% of "that portion of the Trustee's recovery from the D.C. Government in the D.C. Cab [sic] Case, whether by judgment or settlement, which is for the benefit of creditors other than INA." Tripartite Agreement, Record #8, at 6–7.

On November 14, 2004, the bankruptcy court issued a Memorandum of Decision that held that Watt Tieder was not entitled to a success fee above and beyond the contingency fee provided for in the Tripartite Agreement. Bankr. Paper No. 592.[1] Sixteen days later, on December 1, 2004, Watt Tieder filed a "Motion for Reconsideration" of the Memorandum of Decision, asking the bankruptcy court to "reconsider or clarify" whether Watt Tieder's contingency fee would be calculated based on only the principal or also on the interest on distributions to unsecured creditors. Bankr. Paper No. 601. The bankruptcy court granted the motion to reconsider orally on September 1, 2005, and memorialized this decision in an order on September 15, 2005. Bankr. Paper No. 649.

This is an appeal by the owner of K & W (Ira Steinberg, a creditor, who is also entitled to any surplus after creditors are paid) and the Trustee (William Sullivan) from the order granting

---

[1] The accompanying order is Bankr. Paper No. 593 and is also dated November 14, 2004. November 14, 2004, was a Sunday; both the memorandum and order were docketed on November 15, 2004. Whether the bankruptcy judge was working on the weekend or whether the date was a clerical error is not important to this decision, so the memorandum and order are simply referred to by the date on their face.

2

reconsideration. Watt Tieder cross-appeals, arguing that "the bankruptcy court erred when it held that Watt Tieder was not entitled to its contingent fee on the portion of funds distributable to the equity security holder."

Deciding these appeals requires three inquiries. First, this Court must determine whether the decision below was a final judgment that gives rise to appellate jurisdiction. Second, it must decide whether the bankruptcy court had the power to reconsider its order of November 14, 2004, and enter the order being appealed. Finally, it must decide the merits of the appeal and cross-appeal. For the reasons explained below, the Court concludes that it has jurisdiction, that the bankruptcy court had the power to reconsider its prior order, and that the bankruptcy court correctly decided the merits. Accordingly, this Court will, by separate order, affirm the decision of the bankruptcy court in full.

II

Like all federal courts, this Court must as a threshold matter determine whether it has subject-matter jurisdiction over the case. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Under 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from "from final judgments, orders, and decrees" of the U.S. Bankruptcy Court for the District of Maryland. Because so much of the argumentation in this case is about whether the November 14, 2004, order of the bankruptcy court was a final judgment, it is appropriate first to consider whether the "final" order of September 15, 2005, from which an appeal was taken, qualifies as a final judgment. If it does not, this Court lacks appellate jurisdiction and must dismiss the appeal.

The September 15, 2005, order explicitly stated, "THIS IS A FINAL ORDER," *see* Bankr. Paper No. 649, at 2, but this does not end the inquiry. *See Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 358 (4th Cir. 2005) ("The label that a . . . court attaches to an order

3

it issues does not control the question of whether the order is a final decision."). The question is whether the order fully and finally "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"; in particular, a judgment of liability that does not fix damages is not a final judgment. *See id.* (citation omitted). However, in the bankruptcy context, finality "has traditionally been applied 'in a more pragmatic and less technical way . . . than in other situations.'" *Gold v. Guberman*, 407 F.3d 656, 660 (4th Cir. 2005) (quoting *A. H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986)). In particular, a "final judgment" in the bankruptcy context "includes an order that conclusively determines a separable dispute over a creditor's claim or priority," even where that order does not dispose of the entire bankruptcy case. *In re Saco Local Dev. Corp.*, 711 F.2d 441, 445–46 (1st Cir. 1983) (Breyer, J.), *cited with approval in, e.g., A. H. Robins*, 788 F.2d at 1009.

Under this more relaxed standard, the September 15, 2005, order qualifies as final. The court of appeals in *Saco* considered an order that, like the one at issue here, settled the amount due a creditor, subject only to the calculation of a final value by the bankruptcy trustee following the resolution of other claims. 711 F.2d at 448. As in *Saco*, the order at issue here did not specify a final dollar value, but as the *Saco* court observed, "the amount that any one creditor ultimately receives in bankruptcy depends on the result of litigation by other creditors, regardless of whether the order allowing the creditor's claim expressly conditions the award on the outcome of the disputes." *Id.* at 447–48. In *Saco*, as here, the order fully and finally resolved all legal disputes between a particular creditor (here, Watt Tieder) and the bankruptcy estate; the fact that a final calculation will need to be made by the bankruptcy trustee does not change the fact that, as the court below ordered, "no further order quantifying the exact dollar amount of the Applicant's contingent fee shall be required." Bankr. Paper No. 649, at 2. "The exact dollar amount [will] be determined

4

by the Trustee in his Final Report and Proposed Distribution in this case," *id.*, but court proceedings as to Watt Tieder are at an end, and the judgment is therefore final. Accordingly, this Court has appellate jurisdiction.

III

The question of jurisdiction having been decided, the second issue before the Court is whether the bankruptcy court had power to consider and grant Watt Tieder's December 1, 2004, motion to reconsider the court's order of November 14, 2004. Appellants argue that it did not, because (1) the order of November 14, 2004, was final; (2) the motion to reconsider must be construed under Fed. R. Bankr. P. 9023, which incorporates Fed. R. Civ. P. 59 (amendment of judgments); (3) such motions must be filed within 10 days, and this one was not; and (4) unlike most motions deadlines, the bankruptcy court cannot extend a deadline for a Rule 9023/59 motion, because of Fed. R. Bankr. P. 9006(b)(2) (the equivalent of Fed. R. Civ. P. 6(b)). Appellants' argument fails for two reasons.

The first problem with Appellants' argument is that the November 14, 2004, order was not final. Unlike the order of September 15, 2005, that is under appeal, the November 14, 2004, order did not make it clear how Watt Tieder's compensation was to be calculated; it only stated that "the compensation of the law firm is limited to the amount calculated as due under the contingent Fee Agreement approved by the court by the Order entered August 11, 1993." Bankr. Paper No. 593. The effect of this was to reject Watt Tieder's legal argument that it was entitled to a greater success fee, but it did not purport to finally resolve their compensation, and it did not resolve one of the key issues here on appeal, whether Watt Tieder could collect 25% of the interest on the DC CAB recovery, or only 25% of the principal. Thus, it did not qualify as a "final order" even under the

"flexible" standard of *Saco* and *Gold v. Guberman*, and the ten-day time limit for reconsideration did not apply.

The second problem with Appellants' argument is that even if the order of November 14, 2004, had been final, the later order entered by the bankruptcy judge would have been appropriate not under Fed. R. Bankr. P. 9023, which adopts Fed. R. Civ. P. 59, but under Fed. R. Bankr. P. 9024, which adopts Fed. R. Civ. P. 60(a). Because the original order did not specify whether Watt Tieder could collect 25% of principal only, or 25% of interest as well, Watt Tieder's motion to reconsider could not have been asking for a change in the court's ruling on this point. Rather, it asked for a clarification of an order that put the parties on notice that Watt Tieder would collect 25% of something, but was inexact as to what. Such clarifications are permissible, no matter when requested, under Fed. R. Civ. P. 60(a) and Fed. R. Bankr. P. 9024. *See Kosnoski v. Howley*, 33 F.3d 376, 379 (4th Cir. 1994). The bankruptcy court itself appears to have implicitly adopted this conception of the motion to reconsider, *see* Tr. of Reconsideration H'g, Bankr. Paper No. 660, at 7–9, and the motion itself was explicit that a clarification is what Watt Tieder requested, *see* Mot. to Reconsider, Bankr. Paper No. 601, at 1.[2]

Accordingly, the bankruptcy court had the power to reconsider its order of November 14,

---

[2] Appellants argue that the bankruptcy court's order of July 19, 2005, which set a hearing on the motion to reconsider, stated that "[i]nterest is not to be a component of the contingent fee of counsel," and that this indicates that the question of whether Watt Tieder's contingency fee would include 25% of interest had already been resolved against Watt Tieder in the original order. Even if this statement is meaningful in construing the November 14, 2004, order, however, it probably refers to the bankruptcy court's finding—explicit in the November 14, 2004, order, *see* Bankr. Paper No. 592, at 6—that Watt Tieder was not entitled to interest on its fee award. Whether Watt Tieder can collect interest on its fee award until the date when those fees are paid, and whether Watt Tieder's fee can include a percentage of the interest paid to other creditors, are two separate issues. The bankruptcy court resolved the former against Watt Tieder in the original order, but it did not address the latter, which therefore required clarification.

6

2004, to the extent it did so and to enter its order of September 15, 2005, and this Court can turn to the merits of that later order.

IV

The underlying merits are the most straightforward part of this appeal. Appellants argue that awarding Watt Tieder contingency fees on the interest component of the creditors' payments was not what the parties intended under the Tripartite Agreement. However, the language of the agreement is clear: "[Watt Tieder] shall receive a contingent fee recovery of twenty-five percent (25%) of that portion of the Trustee's recovery from the D.C. Government in the D.C. Cab [sic] case . . . which is for the benefit of creditors other than INA." Tripartite Agreement, Record #8, at 6–7. This language makes no distinction between monies recovered and paid to creditors as principal and monies recovered and paid to creditors as interest.

Even though the parties never contemplated that there would be enough surplus funds in the estate that *anyone* would get interest, Watt Tieder is entitled to 25% of the total recovery it earned on behalf of the creditors other than INA. The DC CAB awarded the estate over $12 million *plus interest*; the "recovery" is the amount actually and ultimately paid, which is not just $12 million, but also the interest paid by the District of Columbia to the estate.

Thus, the bankruptcy court correctly construed the Tripartite Agreement, and its decision will be affirmed by separate order.

V

The final issue remaining is Watt Tieder's cross-appeal. Watt Tieder argues that it should have been awarded contingency fees not just on amounts distributed to the unsecured creditors, but

7

also on the surplus that is distributable to the holder of K & W's equity.[3]  Once again, however, the bankruptcy court correctly construed the Tripartite Agreement.  The holder of K & W's equity is not a "creditor" of K & W, and therefore any surplus that is paid to him is not part of Watt Tieder's "recovery . . . for the benefit of creditors other than INA."

Accordingly, this aspect of the bankruptcy court's decision will also be affirmed by separate order.

|  |  |
|---|---|
| 8/3/06 | /s/ |
| DATE | ROGER W. TITUS |
|  | UNITED STATES DISTRICT JUDGE |

---

[3] Appellants argue that this issue was waived because it was not argued in the motion to reconsider, but there is no requirement that every argument that is ultimately appealed be argued in a motion to reconsider first.  This Court therefore decides Watt Tieder's cross-appeal on the merits.